## J. P. MARTIN CO. v. LUNDY.

No. 16420—Opinion Filed April 13, 1926.

**1. Contracts—Failure of Proof—Demurrer to Evidence.**

Where a cross-petitioner pleaded an express contract in writing and its breach by plaintiff, while his proof showed that the obligation of the contract relied on by him was contingent, and further showed that before the time mentioned in the contract for the contingency to arise he had himself abandoned the terms of the written contract relied on, and never afterward asserted or claimed any rights thereunder until sued for an admitted indebtedness, a demurrer to the evidence under the cross-petition should have been sustained.

**2. Account. Action On—Failure of Defense —Direction of Verdict.**

Where no legal defense is shown, and no legal set-off or counterclaim established to an account sued on. while the correctness and past maturity of the account is established by proof which is not seriously controverted by defendant, a motion for a directed verdict in behalf of plaintiff should be sustained.

(Syllabus by Logsdon. C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by the J. P. Martin Company to recover on an open account for $486.08 against W. L. Lundy. Verdict and judgment for defendant on his cross-petition in the sum of $87.15, and plaintiff brings error. Reversed.

In September, 1919, the J. P. Martin Company was a partnership engaged in the merchandise business at Cleveland, Yale, and Pawhuska. C. R. Anthony was the general manager for the partnership, and on September 6. 1919, wrote a letter to the defendant. W. L. Lundy, making him a proposition for employment by the J. P. Martin Company, which proposition was accepted by Lundy, and he commenced working under the contract thus entered into on October 1. 1919. and so continued until June, 1922, when he voluntarily quit the employment of the J. P. Martin Company. February 11, 1920, the J. P. Martin Company ceased to be a partnership and became a corporation. Lundy began working for the partnership under his contract at a salary of $125 per month, with the understanding that if the business justified it other stores would be opened by the company. and that when employees senior to him in the service of the company had been provided for, by being made managers and permitted to acquire an interest in these new stores. he should in his turn be made manager and permitted to acquire an interest in the next new store thereafter opened by the company. On January 1, 1920, Lundy's salary was raised to $150 per month, and in

December, 1920, his salary was again raised to $200 per month. During the same month the J. P. Martin Company voluntarily paid to Lundy a bonus of $300. After the partnership was merged into the corporation, the board of directors determined in the spring of 1922 not to open any new stores by reason of the general business depression. At the time Lundy quit the employment of the J. P. Martin Company in June, 1922, he owed for goods, wares and merchandise, purchased by him from the company during the term of his employment and shown by an open running account, balance of $486.08. The correctness of this account is not questioned, but it was contended by defendant that the same was charged off and ceased to be an evidence of indebtedness against him. Plaintiff's contrary contention is that the account was charged off as a matter of convenience in bookkeeping, but that defendant's indebtedness to that amount continued to be carried in bills receivable, and that he is obligated to pay the same. In defendant's cross-petition, on which he received judgment, he makes a claim for damages in the sum of $2,550, based upon the alleged fact that his services to the plaintiff were reasonably worth the sum of $250 per month, or a total of $8,000, for a period of his employment, while the actual salary received by him was only $4,850, and that he was induced to accept this smaller sum by reason of the promise to give him the management of and permit him to purchase an interest in a new store to be opened by the J. P. Martin Company, which was not done. He alleges that in this particular there was a breach of his contract of employment, and that by reason thereof he suffered damages in said sum of $2,550. A demurrer to this cause of action in the cross-petition was by the court overruled and exception reserved. A second cause of action alleged in the cross-petition was on motion stricken by the court, and need not be further mentioned here.

Upon trial to the court and jury a verdict and judgment resulted in favor of the defendant and against the plaintiff upon the cross-petition for the sum of $87.15. After unsuccessful motion for new trial, plaintiff has brought the case here by petition in error with case-made attached for review.

Thurman S. Hurst, for plaintiff in error.

McCollum & McCollum, for defendant in error.

Opinion by LOGSDON, C. Numerous errors are assigned in the petition in error, but in the view taken of the case here it will only be necessary to consider the fourth assignment of error, which is that the trial court erred in overruling the demurrer of plaintiff to the evidence of the defendant under his cross-petition, and the fifth assignment, which is that the trial court erred in overruling plaintiff's motion for a directed verdict. The contract on which defendant relies to sustain his claim of damages for its breach is a letter written to him at Tekoa, Wash., by C. R. Anthony, manager of the J. P. Martin Company, and dated September 6, 1919, which reads as follows:

"James P. Martin, Dealer in Dry Goods, Hats, Caps, Boots & Shoes, Ready-to-Wear Garments.

"Cleveland, Okla., 9-6.19.
"Mr. Billie Lundy,
"Tekoa, Wash.

"Dear Mr. Lundy: Have heard Hamilton and Hill speak of you so much I feel like I already know you. Mr. Hill was here a week ago and I read your letter, and in connection will say, we will be glad to have you join us, will use you either at Pawhuska or here. Mr. Lundy, we will finance you in the move. I believe your letter stated you needed $600. which we will gladly furnish, and more if needed. You may draw on Fidelity State Bank, Cleveland, when needed, let me know by letter and I will take same up. Now, as for our big chain of stores '3' we operate on the same plan as J. C. Penny Company, yet altogether different in some ways. I'm willing to take you on Mr. Hamilton's recommendation and feel sure you will not be disappointed. We believe that a large per cent. of a store's success is due to its local employees. We believe in putting our very best efforts into our work. We think you will get a store with interest, spring. 1921, if our present success continues. which we are going to try and exceed. We have sold here at Cleveland up to September 1st, $132,-000; the first six days this month we have over $7,200; got $2,908 yesterday. as per enclosed slip. so you see we move around some. We all draw $125 per mo., which we will gladly pay you. We can use you any time, but would like to have you say not later than Nov. 1st any way and possibly sooner: in fact. we can use you now. Mr. Lundy, if you join us now you will be getting in on ground floor, and if I did not think it a far better proposition than you have I would not ask you to come. I believe I studied the Penny proposition harder and closer than anyone and I could not see anything in it for me, and after trying to keep my family up on $85 per, spending $1.200 of my own money in three years, I opened my eyes, quit on my own accord, and came back to the position I left and started work on our chain store plans, which is turning out fine. I know about what your people will say as I was Mgr. (in name only)

when I quit. I opened the Grace store, the same time Tekoa opened. I have never known them to give any one any notice when they decided to let them go. So in order to protect yourself when you turn in your resignation be ready to quit, although I think it best to give them a short notice. I suppose they will sure hate me if you come; you will be the 8 man to quit to come with us. Don't suppose you know it but Mr. Taft of Kellog is going to join us right away this month. This is strictly confidential, as he has not resigned yet. Just wrote him a letter and I mentioned the fact · that you probably would join us. I know he will keep it to himself as he is in the same boat as you. Expecting to hear from you soon saying you will be with us this fall, Yours truly, C. R. Anthony."

It is clearly evident that the above letter does not show an unconditional promise or agreement on the part of plaintiff that it will open any new store under defendant's management, and permit him to acquire an interest therein. That remained a mere contingency under the terms of the offer and its acceptance. "We think you will get a store with interest spring 1921, if our present success continues," is not the language of an unconditional promise nor of a binding contract. That defendant did not consider his acceptance of the proposition contained in the letter binding on him is shown by his acceptance of an increase in salary three months after going to work under the alleged contract, and on January 1, 1921, accepting another increase, which made his salary thereafter $200 a month. That he did not consider plaintiff bound either, is shown by his testimony on cross-examination, thus:

"Q. And then from January 1, 1921, to June 10 or 12, 1922, you drew $200 per month? A. Yes, sir. Q. Did you ever talk to Mr. Martin. J. P. Martin, before you quit the J. P. Martin Company, about an interest that you were expecting to get in some of the stores? A. No, sir. Q. You never mentioned that to J. P. Martin at all? A. Did not. Q. Did you ever mention to the board of directors at a meeting of the board of directors? A. Did not. * * * Q. At the time you quit the employment of the J. P. Martin Company, you didn't ask for an interest in a store, did you; that was in June, 1922? A. I did not. Q. You quit to go to work in another store, didn't you? A. I did. Q. Quit voluntarily? A. Yes, sir."

In his cross-petition defendant alleged his contract in the following language:

"That the contract of employment between this plaintiff and said defendant is in the form of a letter written by said plaintiff September 6, 1919, addressed to this defendant at Tekoa, Wash., and signed by C. R. Anthony, agent and general manager of said

plaintiff, a copy of said letter is hereto attached and made a part of this answer and cross-petition; that the proposition made in said letter was accepted by this defendant by wire, a copy of which cannot be furnished for the reason that this defendant does not now have either the original or a copy, and was further accepted by this defendant coming from the state of Washington to the state of Oklahoma, as heretofore alleged, and entered the employment of said plaintiff."

Over timely objections and exceptions of plaintiff, the trial court permitted defendant to introduce testimony to show that the reasonable value of his services during the term of his employment by plaintiff was from $250 to $300 a month, notwithstanding that by the averments of his cross-petition he relied on an express contract and its breach, which his own testimony showed had been abandoned by him long prior to the spring of 1921, and which he didn't think enough of to call to the attention of the president and board of directors of the company.

Because the evidence was wholly insufficient to establish a breach by plaintiff of the terms of the contract alleged in defendant's cross-petition, the action of the trial court in overruling plaintiff's demurrer to the evidence of defendant under his cross-petition constitutes reversible error.

Upon the cause of action alleged in plaintiff's petition, the record discloses that after the partnership was succeeded by the corporation, an auditor not connected with the company recommended that all open accounts more than a year old be charged off and carried as bills receivable because of convenience in rendering and paying income taxes. This was done, and the instant account was among those so handled. The correctness of this account and that it is unpaid is not seriously in issue. On cross-examination defendant testified:

"Q. Did you know you were indebted to them when you left? A. My understanding was that was charged off. Q. Well, you knew, though, that up to the time it was charged off. you owed this bill, didn't you, this $486.08? A. I knew there was a balance, I didn't know the exact amount. Q. You never did pay that, did you? A. No. Q. When you left you knew it hadn't been paid? A. Yes, sir."

Plaintiff's evidence showed the individual items constituting the account up to December 31, 1920, when it was charged off and transferred from current accounts to bills receivable. It showed the balance due at that time to be $486.08, and that nothing has been paid on it since. This evidence,

together with defendant's testimony, above quoted, established the correctness and past maturity of the account sued on, and the action of the trial court in overruling plaintiff's motion for a directed verdict is erroneous.

For the reasons herein stated the judgment of the trial court is vacated, and the cause is remanded, with instructions to the trial court to vacate its order overruling plaintiff's demurrer to defendant's evidence under the cross-petition, to vacate its order overruling plaintiff's motion for a directed verdict, and to enter judgment for plaintiff as prayed for in its petition.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 797 § 1032; 38 Cyc. p. 1547. (2) 38 Cyc. p. 1574; 26 R. C. L. p. 1073; 4 R. C. L. Supp. p. 1696; 5 R. C. L. Supp. p. 1438.