CHRYSLER CORPORATION, A Corporation, Plaintiff in Error,

v.

WALTER E. ALLEN, INC., A Corporation, William L. Stone, Trustee in Bankruptcy for Walter E. Allen, Inc., A Corporation, a bankrupt, Defendants in Error.

No. 39395.

Supreme Court of Oklahoma.

Sept. 18, 1962.

Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Richard W. Fowler, Oklahoma City, for plaintiff in error.

Phil E. Daugherty, Milton R. Elliott, and Bruce McClelland, Oklahoma City, for defendants in error.

BLACKBIRD, Vice Chief Justice.

The present controversy grew out of the relationship, and course of dealing, between plaintiff in error, the manufacturer of Chrysler, Dodge, and Plymouth automobiles, hereinafter referred to as plaintiff, and the defendant in error, Walter E. Allen, Inc., which, for more than a decade, beginning in 1940, sold Chrysler and Plymouth automobiles in Oklahoma City as an authorized retail dealer. At all material times during this period, parts and accessories for all Chrysler-manufactured automobiles were distributed under the trade, or brand, name of "Mo-Par", by one of plaintiff's subsidiary corporations, Chrysler Sales Corporation. In various parts of the United States, this distribution was effected under contracts between that corporation and certain of its automobile dealers, who (in addition to handling such parts and accessories they used, or sold at retail) sold Mo-Par parts and accessories to others engaged in servicing and repairing Chrysler-manufactured automobiles.

Walter E. Allen, Inc., hereinafter referred to, for brevity, as Alco, and Southwest Parts Corp., headed by Frank Clark, the since-deceased President of Clark Motor Company, an authorized local retail dealer in Dodge and Plymouth automobiles, were both wholesale dealers, or distributors, of those parts and accessories at Oklahoma City.

During the latter part of the above mentioned period, Alco's automobile sales decreased, and it became unable to discharge its financial obligations from the proceeds

of such sales and its income. One of its debts was approximately one-half of the sum of $78,000.00, which Alco, together with another corporation, called the Walter E. Allen Company, owed in delinquent federal income taxes by the latter part of the year 1953, or early 1954.

At about the latter time, plaintiff was pressing Alco to pay for the Mo-Par parts and accessories delivered to it on numerous previous invoices, which, less credits Alco had been given on the account, aggregated a total balance of some $70,000.00. As Alco's stock of parts and accessories was then estimated to have a wholesale value of more than $150,000.00, but U. S. Internal Revenue agents were threatening to place a lien on this stock as security for the aforementioned income tax indebtedness, and there was little, or no, likelihood that Alco would otherwise be able to raise enough cash to pay both said tax indebtedness and its aforementioned Mo-Par indebtedness, it was proposed that it sell its Mo-Par wholesale distributorship, including the stock of parts and accessories it had accumulated as such wholesale distributor, to Southwest Parts Corporation (hereinafter referred to merely as "Southwest"). It was thought that this sale might be made for $175,000.00 (if Southwest was allowed to pay said sum in installments, after merging Alco's parts and accessories business with its own, and gradually disposing of the stock, at wholesale, on orders from other dealers) which said amount would be more than sufficient to pay both the aforementioned income tax indebtedness and the balance Alco owed plaintiff.

Execution of the above described plan and proposal was begun by the entering into, as of February 15, 1954, by Alco and Southwest, of a written contract entitled "PARTS AND ACCESSORIES SALES AGREEMENT." Southwest issued a notice to Alco's creditors on February 16, 1954, that said sale would be consummated March 1, 1954, under the Oklahoma Bulk Sales Law, 24 O.S.1961 § 71 et seq. Under date of February 19, 1954, the aforesaid sales agreement was deposited with Oklahoma City's Liberty National Bank & Trust Company, with instructions from Alco authorizing said bank, as escrow holder, to pay proceeds of said sale, as received from Southwest, to the Director of Internal Revenue, at Oklahoma City, Oklahoma, in an amount not to exceed $85,000.00, to defray the aforementioned income tax debt. These instructions to said escrow agent also provided that the excess, over $85,000.00, which said Bank received from Southwest, should be paid to Alco.

Thereafter, under date of March 2, 1954, Alco modified its above-described instructions to Liberty National by instructing it to pay plaintiff "from time to time" such amounts in excess of $85,000.00 as it received from Southwest under the above-mentioned parts and accessories sale. Notwithstanding such provision for payment of Alco's account to plaintiff, and the further fact that Alco had already started delivering to Southwest, pursuant to the aforementioned contract, the stock covered by it, plaintiff, on March 3, 1954, filed its petition to commence the present action against Alco, praying judgment for the sum of $73,806.55, as the balance then due on Alco's account with it, plus interest on said amount at the rate of 6% per annum from January 31, 1954, until paid.

On the same date (March 3rd) G. E. Brewer, as plaintiff's credit manager and agent in the action, swore out an attachment against the stock of parts and accessories that was being delivered to Southwest; and, it was not until after Alco had obtained a federal court restraining order on March 8th, 1954, that the sheriff's removal, under the attachment, of the parts and accessories from Alco's place of business, was interrupted. On March 17, 1954, Alco filed, in the present action, a bond discharging the attachment, but, by stipulation of the parties, the sheriff's custody of the parts and accessories, and the time for making his return on his execution of the previous attachment order, was extended to March 20th, 1954.

After filing its answer and cross petition herein, Alco was adjudged a bankrupt in federal court proceedings, and one William L. Stone was appointed its trustee in bankruptcy, during August, 1954. Thereafter, Alco and its trustee, hereinafter referred to as "defendants", joined in amending Alco's original pleadings herein. A "Third Amended Answer and Cross Petition" they filed in January, 1959, contained a qualified general denial, together with a special denial that the account plaintiff was suing on was due at the time this action was filed; and, in support of this conclusion, alleged among other things, in substance, that the hereinbefore mentioned sales contract between Alco and Southwest was entered into at the suggestion and urging of a Mr. Fred Dell, regional manager of plaintiff's wholly-owned subsidiary, Chrysler Sales Corporation, and because of the demands for immediate payment of Alco's Mo-Par account made by the said Dell, plaintiff's credit manager, Brewer, and other agents and employees of plaintiff, and because of plaintiff's suggestion and urging, through Dell, that Alco make such sale. This pleading also described certain alleged advantages to plaintiff through such an arrangement, and alleged, in rather extensive detail, various facts contemplated to show that plaintiff, through certain of its officers and agents, not only recommended and approved the sales agreement with Southwest, but, in effect, became a party thereto, at least to the extent of agreeing, or becoming estopped to deny that it agreed, to look to the performance of said agreement for payment of the Mo-Par account, in lieu of attempting to collect it by other means. In this pleading, defendant characterized as a "novation and/or accord and satisfaction", plaintiff's alleged agreement that its account be paid through the escrow holder, Liberty National Bank, out of the proceeds of the sale to Southwest; and, on the basis of the facts alleged, defendants prayed that plaintiff take nothing from them, and that they be discharged with their costs.

In their cross petition, defendants alleged additionally:

"1. That when plaintiff repudicated and breached the said accord and satisfaction and/or novation on March 1, 1954, and subsequently filed this premature action on March 3, 1954 and issued its void attachment against same, the sheriff immediately took possession of same, thus stopping the shipment to Southwest Parts, Incorporated, said Southwest Parts, Incorporated, under the terms of said sale contract attached hereto (Exhibit C) elected to cancel said sales contract except as to such parts already received by it in the approximate amount of $59,000.00, and refused to take any further parts in accordance with the terms of said sales contract (except as to some few which it especially needed); that in an attempt to mitigate the damage done by plaintiff, defendant was forced to file a bond to discharge the void attachment, thus attempting to place itself in position to carry out said sales contract; but said wrongful attachment, and the resultant newspaper publicity and statements made by the agents of plaintiff, which were quoted in said newspaper stories, caused the United States Government immediately to file tax liens against said parts inventory. As a further result of said repudiation and breach, the business reputation of defendant was destroyed; numberous customers called the defendant and cancelled orders for new cars; other creditors who had theretofore been satisfied with defendant's financial condition became alarmed and started proceedings to protect their interest which they feared had been endangered by the action of Chrysler Corporation; that defendant's good will and business reputation in the community was completely destroyed by said unwarranted action of Chrysler Corporation and its breach of its said contract, as aforesaid.

"2. That defendant, after obtaining release of said void attachment, was then forced to attempt to obtain money with which to discharge said government liens, which it did by applying thereto the sum paid into said escrow account by Southwest Parts, Incorporated, (In the approximate amount of $50,000.00) prior to plaintiff's repudiation and breach, as aforesaid, and by the principal officers of said defendant borrowing the balance upon their own personal notes. That after securing the release of such parts inventory from plaintiff's attachment and the government's lien, so much time had elapsed, and the parts had been so confused and damaged while in the hands of the sheriff, that Southwest Parts, Incorporated, refused to take same and defendant had to dispose of same as best it could, and same were finally sold by the trustee in bankruptcy at a great loss. That as a direct result of plaintiff's breach of its said contract, as aforesaid, defendant was forced into bankruptcy on August 7, 1954, all to its loss of profits as a going business concern in the future in the sum of $500,000.00, as hereafter more fully specified.

"3. That the breach of its said contract by plaintiff, and the later filing of this suit in breach of its specific agreement to allow defendant to sell its parts inventory and business, and to pay plaintiff by means of the proceeds of such sale from said trust account after satisfaction of the government obligations, as heretofore alleged made it impossible for defendants to complete said contract, collect the proceeds of such sale, and pay both the government and plaintiff; that plaintiff well knew that the completion of the sale of such parts inventory to Southwest Parts, Incorporated, would have netted sufficient funds to pay its bill in full, and plaintiff well knew that by repudiating and breaching its said contract and its subsequent action in filing this suit and the attachment that it would make it impossible for defendant to fulfill its said contract of sale with Southwest Parts, Incorporated, and would have the result of completely destroying the confidence of the general public and defendant's customers in defendants as a going concern, and that its conduct would have the result, which ultimately happened, of making it impossible for defendant to continue in business and would force defendant into bankruptcy. That all such results were in the contemplation of the parties at the time of all the events hereinbefore alleged, and at the time plaintiff induced defendant to sell its parts inventory in the manner hereinbefore alleged. That as a result of plaintiff's breach of its said contract and agreement and its said actions in pursuance of said breach defendant, in addition to its loss of profits as a going concern, as above alleged, has sustained the following damages:

"A. Loss of business reputation and good will in the community, $250,000.-00.

"B. Loss from incompletion of contract of sale to Southwest Parts, Incorporated, $70,000.00.

"C. Loss of sales of automobiles to customers by reason of said customers cancelling orders therefor after wide newspaper publicity induced by Chrysler Corporation, after issuing said attachment, as aforesaid, which caused said customers to become alarmed and fearful of the stability of defendant as a going business, $10,000.00.

"D. Loss in the course of forced sale of assets in bankruptcy, as aforesaid, $250,000.00.

"E. That prior to said market rejection in 1953 of Chrysler products, defendant had enjoyed an excellent business and business reputation in the community as dealer of Chrysler in selling Chrysler and Plymouth automo-

biles, and had made during the previous 14 years of such association an approximate profit on an average of $50,000.-00 per year; that defendant could reasonably have expected to make such profits over a period of the next ten years (as is shown by the recapture of the market by Chrysler upon redesigning of its cars in 1954, 1955, 1956, and 1957) of a like sum per year, all to its damage in the sum of $500,000.00, as hereinbefore alleged.

"WHEREFORE, defendant prays judgment against plaintiff in the amount of $1,080,000.00."

■ After the case was at issue, and a jury had been empaneled, it was shown that because of credits accruing to Alco, and approved by plaintiff since its filing of the action, the claim sued upon was reduced by approximately $18,000.00. At the close of the evidence, the trial court sustained plaintiff's challenge to its sufficiency to support defendant's cross petition, and sustain plaintiff's motion for a directed verdict on its cause of action. Judgment was thereafter entered on said directed verdict in plaintiff's favor for the sum of $55,798.91. Thereafter, however, the trial court entered an order sustaining a motion for a new trial filed by defendants, and plaintiff has perfected the present appeal from said order and/or judgment.

■ Plaintiff's contention that the trial court erred in sustaining defendant's motion for a new trial, is based upon the hypothesis that said court's previous direction of the verdict in its favor was correct, because there was no issue, or conflict in the evidence, as to the balance due on the Mo-Par account. By a rather detailed discussion, plaintiff attempts to demonstrate that because of the effect of certain allegations in defendants' pleadings, it was relieved of the burden of proving the correctness of the balance of said account. We do not think plaintiff is in a position to rely on such an argument here, because it appears to us, from our examination of the record, that it voluntarily tried the case as if it had such

burden. As said in Gillman v. Pape (Mo. App.) 132 S.W.2d 1052, 1054:

"It has been held so often by this and other appellate courts that the parties are bound in the appellate court by the theory on which the case was tried below, that citation of cases is scarcely necessary. It is almost equally as well settled that one may not complain of the trial of an issue outside the pleading if he voluntarily tries the case on the theory that such an issue is in the case. (Citing cases)."

See also 3 Am.Jur., "Appeal & Error", section 384, note 15, and cases digested in 2A Okl.Dig., under "Appeal and Error", ☞882(3). In accord with the foregoing, we will treat this case on appeal as it was treated at its trial, viz., as if plaintiff had the burden of establishing the correctness of the account balance it sought to recover from defendants.

■ In the journal entry of the trial court's order sustaining defendants' motion for a new trial, the reason given for said ruling was set forth as the finding "* * * that there was a conflict in the evidence as to the amount of money due to plaintiff upon its account with * * * *" Alco, "* * * that said issue should have been submitted to the jury * * *". Plaintiff herein challenges the correctness of said finding, and contends that there was no conflict in the evidence as to the balance due on the Mo-Par account. Plaintiff's counsel interpret the testimony of Alco's president, Walter Allen, and the evidence as a whole, as not disputing the balance's amount indicated by plaintiff's evidence; and they cite H. C. Whitmer Co. v. Richardson, 271 Ky. 112, 111 S.W.2d 577, and J. P. Martin Co. v. Lundy, 117 Okl. 164, 246 P. 855, in support of their position that the sustaining of its motion for a directed verdict was, for this reason, not error, and constituted no valid ground for the trial court's sustaining of defendant's motion for a new trial. We do not agree with plaintiff's interpretation of the evidence; nor do we conceive it to be the law in this jurisdiction (as seems to

be plaintiff's idea) that Alco had the burden, in order to "seriously controvert" the account's asserted balance, to establish the specific charges or credits which would support its position that said balance was not the true, or correct, one. In view of the complexity of the account, and the involved manner in which different kinds of charges and credits were supposed to accrue in said account, over the extended period of time involved, as contemplated in the agreements between plaintiff and Alco, we cannot unequivocally, or categorically, say (as a matter of law and/or fact) that the evidence established conclusively, or so preponderately as to reasonably admit of no other conclusion but that the amount sought by plaintiff was the correct balance due on said account (as plaintiff contends, citing Underwood v. Pinson, Okl., 263 P.2d 418, and Moyer v. Colyer, Okl., 283 P.2d 815). Plaintiff's position is correct to the extent of Alco's failure to negate, by its evidence, the fact that (before the alleged novation and/or accord and satisfaction) *there was a balance* in the account due from it to plaintiff. But we cannot say there was so clearly a lack of denial—as to the amount of such balance—that the trial court manifestly erred, or abused his discretion, in granting such a new trial as would afford an opportunity for the evidence to be examined, and such issue determined, by a jury. As quoted from Rein v. Patton, 208 Okl. 442, 257 P.2d 280, 281, in Houston v. Pettigrew, Okl., 353 P.2d 489, 493:

> " '2. The judge who presides at the trial of a case, hears the testimony of the witnesses, observes their demeanor, and has a full knowledge of the proceedings had and done during the process of the trial, is in a better position to know whether or not substantial justice has been done than any other person. Where such judge sustains a motion for a new trial, *it will require a clear showing of manifest error and an abuse of discretion* before the appellate court will be justified in reversing such ruling of the trial court.' " (Emphasis ours).

The last proposition advanced by plaintiff is as follows:

> "Even if the court was correct in its ruling that there was a conflict in the evidence as to the exact balance due on the account, the court should have limited the new trial to that question alone, and it was error to order a retrial of other issues already correctly decided."

In support of this proposition, plaintiff cites 39 Am.Jur., "New Trial", sections 21–23, to the effect that it is generally regarded as *within the power* of the trial court " * * * where there is more than one issue of fact in a case, and such issues are distinct and separate in their nature, to order a new trial of one issue, and to refuse it as to others. * * *." It is plaintiff's position in the present case that, assuming arguendo, a new trial, as to its alleged cause of action against Alco, was warranted, the judge's order and/or judgment therefor should have related to that cause of action alone, leaving to stand intact his previous order sustaining plaintiff's challenge to the sufficiency of the evidence to support defendants' cross petition.

As far as the record shows, the question of whether a new trial in the case should be thus limited, and only a partial new trial ordered, was not raised until about two weeks after the trial court had, on April 27th, 1960, made its order sustaining defendants' motion for a new trial, when, on May 10th, 1960, plaintiff filed a motion for said court "to vacate or modify" its said previous order. In said motion, plaintiff referred to the fact that the previous order mentioned, as the basis for said order, only the necessity of a jury trial as to the amount due on the Mo-Par account; and plaintiff alleged, inter alia, that "It would be manifestly unjust to require the parties to try anew all of the issues * * * which * * * already have been correctly determined * * *". Without giving his reason therefor, the trial court, in his order as to the latter motion, merely overruled it, and further decreed " * * * the original order

of the 27th of April, 1960, is to remain in full force and effect, and the new trial shall be upon all issues."

█ In its reply brief, plaintiff represents that the reason the trial court refused to limit the issues to be retried was " * * * doubt as to its power in that respect." There is nothing in the record, however, to affirmatively, or unequivocally, support this statement; and we will presume that, if the trial judge had such power, he was cognizant of it. But, demonstrating that a judge *has the power* to act, is not the same as showing that he has erred, or abused his discretion, by not acting, or exercising that power; and this latter is the burden that the appellant, in an appeal like the present one, assumes. This is especially true of one attempting to support plaintiff's present argument, since the granting of a whole new trial is the usual procedure, and the granting of only a partial new trial is, by its nature, a remedy of limited, or restricted, application, conditioned upon considerations not necessarily involved in the granting of a general new trial. In this connection see 39 Am.Jur., supra, section 22. The foregoing is inconsistent with plaintiff's claim that *defendants had the burden* of showing that the trial court granted the new trial for reasons other than the ones specified in its order of April 27th, 1960. If the question of whether such a new trial should be complete, or only partial, is properly before us in this appeal, said question should not be considered, without also considering that part of the record showing what later transpired when the trial court was, for the first time (as far as the record shows) asked to, and did, consider that question. Since, upon consideration of that part of the record, it does not appear why he ruled, as he did, upon that matter, we do not think we are justified in implying, or concluding, that said later order was without any other reason, ground, or basis, than the finding and conclusion set forth in the previous order of April 27th, 1960. In other words, the record as to the matter (upon which plaintiff seeks our present consideration) does not limit our consideration exclusively to (that) one ground, as did the trial court's order in Benedict Bros. Const. Co. v. Davoult, Okl., 266 P.2d 960, cited by plaintiff. We will therefore affirm the trial court's order sustaining defendant's motion for a new trial, if, on the basis of any ground alleged in said motion, said court cannot be held to have erred on a pure and unmixed question of law, or acted arbitrarily or capriciously. See Carpenter v. Buellesfeld, 187 Okl. 213, 102 P.2d 119, and Shawnee Mutual Fire Ins. Co. v. School Board, 44 Okl. 3, 143 P. 194.

█ In this connection, we notice that the sixth ground, set forth in defendant's motion, alleged error in the trial court's aforementioned ruling as to the insufficiency of the evidence to support defendants' cross petition. But plaintiff takes the position that this allegation presented no ground for a new trial, as the trial court's ruling (there referred to) was eminently correct. This is said to be true because the evidence did not establish there was any "meeting of the minds" between plaintiff and Alco on the alleged agreement which constituted the basis of defendant's cross petition. Plaintiff first implies that it is absurd to believe plaintiff would have agreed to look exclusively to the proceeds of the Alco-Southwest sale for payment of its Mo-Par account, both because said stock was not worth as much as the sum of the balance due on said account, plus the tax indebtedness of Alco and the other Allen Company, and because the latter's part of said tax indebtedness was a personal one, rather than being related in any manner to Alco, or to its transactions with plaintiff.

For support of its assertion concerning the value of the parts and accessories stock, plaintiff's counsel cite a portion of the testimony of the witness, Charles E. McDonald, who, for several years prior to Alco's bankruptcy, was its Parts Manager. We have examined the evidence cited, and, while we agree that it shows that said stock's value of $151,000.00 at the end of the year 1953, was reduced by sales during January and

February of 1954, it fails to show the amount of said reduction, or that, when the Alco-Southwest sale was negotiated in February, 1954, said stock had a value less than the total of the true balance of the Mo-Par account and the aforementioned tax indebtedness. Nor do we think the absence of evidence showing that plaintiff ever agreed "to cancel or forgive" the Mo-Par balance is fatal to defendant's recovery against plaintiff. We think that if plaintiff agreed to *look to* fulfillment of *the Alco-Southwest sales agreement for payment* of its Mo-Par account, and, pending said fulfillment, to *forbear* collection by other means, Alco had a right to rely on its carrying out said agreement. In relation to "estoppel", we think plaintiff's position might be found to be analogous to that of the defendant in error in Rogers v. Acme Oil Tool Co., Okl., 306 P.2d 704. After examining the record, we are convinced that the evidence pertaining to defendants' alleged cause of action against plaintiff was such as to render not manifestly arbitrary and capricious, or error as to a pure and unmixed question of law, the trial court's action in ordering a complete new trial, instead of a partial one on plaintiff's alleged cause of action only. In so doing, we are not holding that the evidence was such that such a remedy was *required,* or even that its submission to a jury would have been *required.* In this connection, see the previous opinions quoted in Houston v. Pettigrew, supra. Also, as quoted from Hughes v. Chicago, R. I. & P. Ry. Co., 35 Okl. 482, 483, 130 P. 591, in St. Louis & S. F. Ry. Co. v. Wooten, 37 Okl. 444, 132 P. 479:

> " 'Trial courts are invested with a very large and extended discretion in the granting of new trials, and new trials ought to be granted whenever in the opinion of the trial court the party asking for the new trial has not probably had a reasonably fair trial, and has not in all probability obtained or received substantial justice, although it might be difficult in many instances for the trial court or the parties to state the grounds for such new trial upon paper so plainly that the Supreme Court could understand them as well as the trial court and the parties themselves understood them.'

\* \* \* \* \* \*

"No appellate court, be it ever so wise or experienced, can get as correct an idea from a cold mute record of a court proceeding as to whether or not a losing litigant has had a reasonably fair trial, and as to whether or not justice has prevailed, as can the trial judge who conducts the proceedings, sees and hears the parties, the witnesses, their manner of testifying, and what they say, and how they look and act while saying it."

In accord with the foregoing, the trial court's order and/or judgment granting a new trial is hereby affirmed.

WILLIAMS, C. J., and DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.