MERRELL LOGISTICS v. GREGORY GAS SERVICES



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MERRELL LOGISTICS v. GREGORY GAS SERVICES

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MERRELL LOGISTICS v. GREGORY GAS SERVICES
2021 OK CIV APP 47
Case Number: 118276
Decided: 09/17/2021
Mandate Issued: 12/17/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 47, __ P.3d __

 
MERRELL LOGISTICS, L.L.C., Plaintiff/Appellant,
v.
GREGORY GAS SERVICES, L.L.C., Defendant/Appellee.
APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA
HONORABLE LINDA G. MORRISSEY, TRIAL JUDGE
AFFIRMED IN PART AND REVERSED IN PART
Heath E. Hardcastle, James W. Rusher, James D. Hopper, ALBRIGHT, RUSHER & HARDCASTLE, Tulsa, Oklahoma, for Plaintiff/Appellant
Charles E. Wetsel, TEAGUE & WETSEL, PLLC, Edmond, Oklahoma, for Defendant/Appellee
GREGORY C. BLACKWELL, JUDGE:
¶1 The plaintiff, Merrell Logistics, LLC, appeals a judgment, entered after jury trial, in favor of the defendant, Gregory Gas Services, LLC. Merrell claims the trial court erred in failing to dismiss all of Gregory's counterclaims on the basis of federal preemption prior to trial and that the jury's grant of $75,000 for damages to business reputation was contrary to law. On review, we affirm the trial court's denial of Merrell's efforts to dismiss Gregory's counterclaims on preemption grounds because Merrell waived that argument--an affirmative defense--by waiting until the morning of trial to raise the issue. However, we reverse the judgment insofar as it awarded Gregory $75,000 in damages for harm to its business reputation based on a simple breach of contract. As such, the judgment against Merrell for $34,905.50 for breach of contract is affirmed and the judgment against Merrell for $75,000 for "damage to business reputation" is reversed.
BACKGROUND
¶2 This matter began with what was to be a routine shipping transaction. Gregory is a manufacturer/refurbisher/dealer of gas-processing equipment. Gregory needed to ship several loads of equipment, which together comprised a "triethylene glycol regeneration skid unit" (TEG unit), from its shop in Shawnee, Oklahoma, to a client's worksite in Butler, Pennsylvania. Gregory contacted Merrell, a transportation broker, to arrange the shipment. Merrell, in turn, contracted with a shipping company to actually move the equipment. However, when the TEG unit arrived in Butler, a large component--described in the record as a "vessel" or "separator"--was missing. The loss of the vessel meant that the TEG unit could not be immediately put into service.[1]
¶3 Gregory located a replacement vessel, and Merrell arranged transportation of the new part to Butler through another shipper. The new shipper's driver deviated from the route Gregory had provided Merrell and the truck was eventually completely immobilized. A tractor-trailer tow-truck crew was called in to perform an extraction. Of course, all of this further increased the time before the TEG unit could be put into service, which increased costs to Gregory's client.
¶4 Merrell charged Gregory $23,397.50, in seven separate invoices, for its services. Gregory refused to pay any of the invoices, and Merrell sued to recover payment. Gregory answered and filed counterclaims against Merrell for breach of contract, negligence, negligent entrustment, and damage to business reputation.
[2] Before trial, the court entered partial summary judgment in favor of Merrell as to a portion of its invoices, awarding $17,137.50, being full payment for five out of the seven invoices. The case proceeded to a jury trial on Merrell's outstanding claim for payment, being $6,250, as well as Gregory's counterclaims.
¶5 On the morning of trial, Merrell filed a motion to dismiss Gregory's counterclaims, arguing for the first time that they were preempted by federal law and that the state court therefore lacked subject matter jurisdiction. The trial court took the request under advisement but proceeded with the trial. The only witnesses at trial were the principals of Gregory and Merrell, being James Gregory and Darryl Sartwell, respectively. The jury returned five separate verdicts, as follows:
(1) As to Merrell's claim for payments on its outstanding invoices, the jury found in favor of Merrell, but awarded just $3,000 of the outstanding $6,250 in claimed invoices. 
(2) On Gregory's counterclaim for breach of contract, the jury found in favor of Gregory and awarded $34,905.50 in damages.
(3) On Gregory's counterclaim for negligence, the jury found in favor of Merrell. 
(4) On Gregory's counterclaim for negligent entrustment, the jury found in favor of Merrell.
(5) On Gregory's claim for damage to business reputation, the jury found in favor of Gregory, and awarded $75,000 in damages.
After the verdicts were in, but prior to the entry of judgment, Merrell twice renewed its motion to dismiss based on preemption. The trial court denied all such motions, and entered a written judgment memorializing the jury's verdicts. Merrell alone appeals.
STANDARD OF REVIEW
In an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the jury's verdict or the trial court's judgment based thereon. Where such competent evidence exists, and no prejudicial errors are shown in the trial court's instructions to the jury or rulings on legal questions presented during trial, the verdict will not be disturbed on appeal.
Florafax International, Inc. v. GTE Market Resources, Inc., 1997 OK 7, ¶ 3, 933 P.2d 282 (citations omitted).
¶6 This appeal also raises a pure question of law--namely, whether the trial court should have dismissed the action for want of subject matter jurisdiction--which is an issue we review de novo. Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶14, 859 P.2d 1081.
ANALYSIS
Preemption Issues
¶7 We address first whether the trial court should have dismissed Gregory's counterclaims for want of subject matter jurisdiction due to Merrell's claim of federal preemption.
¶8 Merrell argued below, and again on appeal, that the trial court lacked subject matter jurisdiction over Gregory's state-law counterclaims because they were "completely preempted" by federal law. Specifically, Merrell pointed to both the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 et seq., and a portion of the Interstate Commerce Commission Termination Act of 1995 (ICCTA), 49 U.S.C. § 14501(c)(1). Merrell argued that these federal statutes preempted state laws related to a "price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."
¶9 Merrell's argument is based on the flawed premise that even if Gregory's state-law counterclaims were preempted by federal law, that this fact alone removed the trial court's power to try the matter. A claim of preemption is an affirmative defense, and as such, the claim may be waived. Reeds v. Walker, 2006 OK 43, ¶ 14, 157 P.3d 100. Additionally, state trial courts are courts of general jurisdiction, which have the authority to hear both state and federal claims except where "Congress affirmatively assigns exclusive jurisdiction over a federal claim to the federal courts." Id. ¶ 11. There is a "deeply rooted presumption in favor of concurrent state court jurisdiction" that is only overcome "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478, 101 S.Ct. 2870, 2875 (1981).
¶10 However, Merrell does not actually argue that we are dealing with a law conferring exclusive jurisdiction to federal courts, laws which are very limited. See Tafflin v. Levitt, 493 U.S. 455, 471, 110 S. Ct. 792, 801 (1990) (Scalia, J. concurring) (listing, for example, bankruptcy, patents, admiralty and maritime law, federal criminal law, and actions against consuls and vice consuls of foreign states as among "the standard fields of exclusive federal jurisdiction"). And such an argument would have been nonsensical, at least in regards to the Carmack Amendment. That statute, by its terms, grants jurisdiction to both state and federal courts. 49 U.S.C. § 14706 ("A civil action under this section may be brought against a delivering carrier in a district court of the United States or in a State court." (emphasis added)). Rather, Merrell's argument is that Gregory's claims, if properly pled, should have been based on the cited federal laws--i.e., that claims against an interstate carrier (or apparently an interstate broker), must be brought under federal law, not state law. Had the claim been timely made, Merrell may have obtained dismissal of those claims, although Gregory would have surely been granted leave to amend. However, having waited until the morning of trial--and more than ten months after the deadline for dispositive motions--we find that Merrell waived any argument it may have had based on federal preemption.
[3] Furr v. Thomas, 1991 OK 93, ¶ 23 817 P.2d 1268, 1272 ("The failure to plead an affirmative defense operates as a waiver of that defense.").
Damages Based on Injury to Business Reputation
¶11 Merrell makes several additional arguments, all of which we view as attacking, in one way or another, the jury's award of $75,000 to Gregory for "injury to business reputation." Simply stated, the relevant argument is: (1) damages based on injury to business reputation are not available for a breach of contract absent a showing that the parties specifically contemplated such damages in their agreement; (2) no such showing was made here; (3) therefore, the jury's award for such damages must be reversed. Because we agree with the general rule, we find the trial court's instructions to the jury on the question were fundamentally flawed, and because Gregory offered no evidence that would take its claimed damages based on injury to business reputation outside the general rule, we reverse the award of $75,000 for injury to business reputation. We affirm, however, the award of $34,905.50, which were damages that fell within the class of damages generally allowed in breach of contract cases. Because we find this issue dispositive, we decline to review Merrell's additional claims of error.
[4]
¶12 We note first the exact legal nature of the judgment at issue. The jury found in favor of Gregory on its breach of contract claim and its claim for damage to business reputation. However, the jury found against Gregory for its claims of negligence and negligent entrustment. Hence, it must be inferred that the jury found no negligence by Merrell, but merely a failure to perform according to contract terms. All damages awarded, therefore, should flow from Merrell's breach of contract theory, i.e., that the contract between Gregory and Merrell was breached because the first load arrived incomplete and the second was eight hours late.
¶13 A verdict form for damage to business reputation was provided. As to the elements of a claim for damage to business reputation, however, all that was provided was a modified version of the standard OUJI instruction on "foreseeability of special damages." This instruction, number thirty-four, stated that damages for "damage to business reputation" could be awarded if they "are the kind that would ordinarily result from a breach of the contract" or that Merrell "at the time the contract was made ... knew these losses would result from a breach." For the following reasons, we find the instruction was clearly erroneous under the circumstances and likely misled the jury.
[5]
¶14 There appears to be very little history in Oklahoma law regarding a claim for damage or injury to business reputation based on a simple breach of contract, and we have found no recorded recovery on that theory. Although numerous Oklahoma cases concern damages for harm to "business and reputation" as a separate recovery, these are tort cases, often involving some form of defamation claim.
[6] The remainder usually involve some form of tortious or malicious interference claim, abuse of legal process by taking a false judgment, or occasionally negligence. Published cases even mentioning a claim for lost future profits due to reputational damage by a simple breach of contract are rare, however. Indeed, we find only three in the last 100 years, and none offers any particular insight in this case.[7] Thus, Gregory cites to no Oklahoma case in which damages in the form of a future loss of business caused by reputational damage based on a simple breach of contract have been awarded.
¶15 Nor does this appear to be a claim that is regularly allowed in other states. See O'Leary v. Sterling Extruder Corp., 533 F.Supp. 1205 (E.D. Wis. 1982) (stating that "courts seem to be in general agreement that damages for injury to reputation are not properly awardable in a breach of contract suit" and collecting cases); Redgrave v. Boston Symphony Orchestra, Inc., 855 F.2d 888, 892 (1st Cir. 1988) (citing additional cases and limiting such damages to contracts involving literary, artistic, or entertainment fields). Texas also explicitly rejects this doctrine. See Sterling Projects Inc. v. Fields, 530 S.W.2d 602 (Tex. Civ. App. 1975, no writ); Nelson v. Data Terminal Systems, Inc., 762 S.W.2d. 744 (Tex. Civ. App. 1988, writ denied) (diminution of value of franchisee's business by reputational damage was not a proper measure of damages in a breach of contract case). See also 22 Am.Jur.2d Damages § 61 ("A plaintiff cannot recover for damage to its reputation arising out of an alleged breach of contract."); 24 Williston on Contracts § 66:4 (4th ed. 2013) ("[T]he courts are in agreement that consequential damages for harm to reputation are not recoverable [in a breach of contract action], because they are altogether nonquantifiable and speculative.")
¶16 We are persuaded by these authorities and hold that "reputational damages" for a simple breach of contract, without any evidence that the parties contemplated such damages at the time of the contract, are not available as a matter of law in Oklahoma. Such damages are essentially tort damages that cannot be quantified by normal business accounting. In this case, after a thorough review of the record, we find that Gregory did not set forth any evidence that the parties to the contract between Merrell and Gregory could have anticipated that "reputational damages" were at stake.
¶17 Finally, we note that Gregory's claim of reputational damages might be viewed as a claim for special damages arising from future business losses caused by the late delivery of the equipment--aka lost profits. Such damages are permissible in appropriate breach of contract cases, and the doctrine has been examined extensively by Oklahoma courts. In order to recover for lost profits, however, a litigant must prove several specific elements. Missouri Pac. R. Co. v. Ridley, 1962 OK 277, 383 P.2d 227, a case involving alleged special damages caused by a delayed shipment of cattle, summarizes the law on the question of damages for delayed shipments:
'If an article is intended for use in business at destination, and the carrier unreasonably delays its transportation, the owner cannot recover special damages, such as loss of its use during the delay or the profits which he would thereby have made if it had been seasonably delivered, unless the owner alleges and proves that the carrier, at the time the contract for its transportation was made, was informed of the special use to which it was to be put. And proof that the carrier had knowledge of the general use to which the article was to be put will not ordinarily be sufficient to charge the carrier with liability for loss of its use or the profits which would thereby have been made.'
Id. ¶11, 230 (quoting Alton R. Co. v. Oklahoma Furniture Mfg. Co., 1942 OK 60, 122 P.2d 152). Oklahoma Furniture, in turn, was a case involving a furniture factory idled by a late delivery of springs.
¶18 These cases demonstrate what Gregory was required to show to receive special damages due to late delivery. In Ridley and Oklahoma Furniture the damages claimed were clearly proximate to late deliveries that were made well outside of the normal expected time frame. The furniture factory was directly idled because of the late delivery of springs. The cattle lost weight, a condition directly due to late delivery. Even in the case of direct, proximate harm, the Court required that the plaintiff in Oklahoma Furniture specifically inform the railroad that the factory would be idled unless the normal transit time was adhered to before a loss caused by late delivery would be foreseeable to the railroad. The Court in Ridley found that the shipper had not informed the railroad that the cattle would be rejected if not delivered after the usual transit time, and hence a loss caused by late delivery was not foreseeable to the railroad.
¶19 These limits on special damages for late delivery are based on the principle that only an informed carrier can knowingly assume the risk of such damages if a breach occurs. If a carrier or broker is to assume the risk of many thousands, or even millions of dollars in future business losses stretching over a period of years because of a late delivery, and so act effectively as an insurer of a shipper's future business with a client, it must be permitted to do so with full knowledge of the risk involved and have an opportunity to adjust its rates to reflect this substantial risk, or refuse the shipment because of the heightened risk. Hence the requirement of specific notice to the carrier.
¶20 Further, the very uncertainty of a shipper's anticipated future business at the time a carrier undertakes to move certain goods makes it extremely difficult to show that the carrier knowingly accepted such a risk. The expected nature and amount of the shipper's future business is unknown to the carrier absent very special circumstances. Although Gregory claimed a loss of some $200,000 over three years, it could have been $20,000 or $20,000,000, dependent entirely upon the commercial relationship between Gregory and its clients, relationships of which Merrell had little or no knowledge.
¶21 The trap that an extension of Ridley into more remote and speculative forms of damage sets is clear. The thrust of Gregory's argument for breach was that Merrell promised to deliver the original unit, which arrived late and incomplete. The jury found no negligence by Merrell for failure to deliver on these promises. Gregory argues that general contract terms promising to deliver freight or instructions that an item is to be onsite at a specific time constitute an acceptance of the risk of the loss of future business losses between Gregory and its client for a period of three years. We find that there was no evidence presented at trial that such damages were contemplated in the agreement between Gregory and Merrell, and are therefore not recoverable for breach of that contract.
[8] A contract requiring that a load will be delivered at a certain date or time or an implied contract that it will be delivered intact are normal parts of a shipping contract. If these facts are enough to put a shipper on notice that it has assumed the contractual risk of special damages, special damages could exist in almost every case of late or incomplete delivery. We find, however, that neither such statements nor any general knowledge by Merrell of the workings of the gas extraction business or the purpose of the TEG unit was sufficient to place Merrell on such notice that it knowingly assumed the risk of not only damages directly caused by the late delivery, such as idled equipment on site, but also that it had assumed the risk that Gregory's anticipated future business with its client would be damaged.
¶22 On review, we examine "[t]he applicability of the instructions to the issues when the instructions are considered as a whole, and above all, whether the probability arose that jurors were misled and reached a different conclusion due to an error in the instruction." Cimarron Feeders, Inc., v. Tri-County Elec. Coop., Inc., 1991 OK 104, ¶ 6, 818 P.2d 901. In this case, the special damages instruction simultaneously stated a cause of action not available in Oklahoma and failed to state the elements required to recover special damages for a delay in freight delivery pursuant to Oklahoma common law. Further, even if such an instruction had been properly given, we find that the jury could not have returned a verdict in favor of Gregory for damage to business reputation based on the evidence presented. That portion of the judgment is therefore reversed.
CONCLUSION
¶23 For the reasons set forth above, we reverse the trial court's judgment as to the $75,000 awarded to Gregory for damage to its business reputation. In all other respects, the trial court's judgment is affirmed.
¶24 AFFIRMED IN PART AND REVERSED IN PART.
WISEMAN, P.J., and RAPP, J. (sitting by designation), concur.
FOOTNOTES
[1] The vessel was purportedly bolted onto the TEG unit and how it became detached or lost from the truck is not revealed in the record. Despite its significant size--it was described at trial as "the size of a Volkswagen"--it was apparently never recovered and its whereabouts remain a mystery.
[2] Gregory sought approximately $240,000 on their counterclaims at trial. They asked for a total of $34,905.50 under their contract and negligence theories. This was comprised of $4,000 to replace the part that mysteriously disappeared from the first truck, $2,555.50 for a crane rental to unstick the wayward second truck, and $28,350 for credits issued to its client for additional expenses associated with the late delivery. They also sought $203,339 for their separate claim of "damage to business reputation." This number was calculated by taking what Gregory believed three years of its profits would have been from the client involved in the botched delivery had the delivery gone as planned and that client continued to do business with Gregory.
[3] This is equally true of Merrell's claim that Gregory's counterclaims fell under the doctrine of "complete preemption." Contrary to the parties' understanding, the doctrine of "complete preemption" does not concern the limits of a state court's jurisdiction, but is rather an exception to the federal rule governing its own jurisdiction, which, unlike state courts, is limited. Under the "well-pled complaint rule" used in federal court, the court must look solely to the face of the complaint to determine whether it has jurisdiction to hear a case. "[T]he face of the complaint must show 'either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Reeds v. Walker, 2006 OK 43, ¶ 12, 157 P.3d 100, 108 (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27--28, 103 S.Ct. 2841, 2856 (1983)). The U.S. Supreme Court has recognized "a narrow exception" to this rule, which provides that "a strictly state-law claim presents a federal question if Congress intended for a specific federal statute to provide the exclusive cause of action, procedures, and remedies for that claim." Id. In short, the invocation of "complete preemption" is not an avenue by which a state-court defendant can seek refuge in federal court, but an avenue for a federal-court plaintiff that has not cited any specific basis for federal jurisdiction to remain in federal court. Merrell's attempt to use the doctrine in this retrograde manner is impermissible.
Further, we decline to recognize either of the federal statutes Merrell cites as falling under the doctrine of complete preemption. Thus far, federal courts have recognized just three statutes as falling under the doctrine. They are § 301 of the Labor Management Relations Act, most of the Employee Retirement Income Security Act of 1974 (ERISA), and § 30 of the National Bank Act. Ferguson v. JRMB II Inc., CIV-11-758-L, 2011 WL 13136187, at *2 (W.D. Okla. Dec. 30, 2011) (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8, 11 (2003)). The federal circuit courts have developed various tests to determine if a statute falls within the doctrine. See, e.g., Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229--33 (4th Cir. 1993); Aaron v. National Union Fire Ins. Co. of Pittsburg, 876 F.2d 1157, 1164--65 (5th Cir.1989); Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 857 (11th Cir. 1999). We find no indication that claims covered by the Carmack Amendment or FAAA provisions Merrell relies on have been, or should be, added to the exclusive list of "completely preemptive" federal statutes. However, as noted above, the resolution of the question has no bearing on the outcome of this case.
[4] Specifically, Merrell also argues that the court also erred in: allowing a "res ipsa loquitur" instruction; allowing an "assumption of risk" instruction; and admitting Gregory's exhibits six and eight.
[5] We are aware that no objection was made to this particular instruction at trial. However, for the reasons set forth below, we find that the instruction misstated the law of Oklahoma on the availability of damages based on harm to business reputation in a breach of contract case, and therefore constitutes fundamental error. See Sellars v. McCullough, 1989 OK 155, ¶¶ 9-12, 784 P.2d 1060, 1062-63 ("Fundamental error is narrowly defined as a substantial misstatement of a fundamental legal principle which appears on the face of the instructions.").
[6] Typically such cases involve media outlets. See e.g., Malson v. Palmer Broad. Group, 1997 OK 42, 936 P.2d 940; Gaylord Entertainment Co. v. Thompson, 1998 OK 30, 958 P.2d 128; Magnusson v. New York Times Co., 2004 OK 53, 98 P.3d 1070.
[7] See Flour Mills of Am., Inc. v. Am. Steel Bldg. Co., 1968 OK 15, 449 P.2d 861; Chrysler Corp. v. Walter E. Allen, Inc., 1962 OK 189, 375 P.2d 878; Day v. Ferguson, 1927 OK 426, 263 P. 126. None of these cases indicate that the party claiming damages to business reputation actually received any judgment on its claim for such damages based on a simple breach of contract.
[8] We also note that the understanding that an item to be shipped will be used in business is not sufficient to make the type of damages Gregory claimed at trial foreseeable. See, e.g., Quincy Johnston, Inc. v. Wilson, 1959 OK 14, 358 P.2d 205 (denying special damages for late delivery of a truck, despite the fact that the seller was aware the buyer intended to use the truck for commercial purposes).




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 155, 784 P.2d 1060, 60 OBJ 3052, Sellars v. McCullough
Discussed
 1991 OK 93, 817 P.2d 1268, 62 OBJ 2873, Furr v. Thomas
Discussed
 1991 OK 104, 818 P.2d 901, 62 OBJ 3111, Cimarron Feeders, Inc. v. Tri- County Elec. Coop., Inc.
Discussed
 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed
 1997 OK 7, 933 P.2d 282, 68 OBJ 306, Florafax International, Inc. v. GTE Market Resources, Inc.
Discussed
 1997 OK 42, 936 P.2d 940, 68 OBJ 1454, Malson v. Palmer Broadcasting Group
Discussed
 1959 OK 14, 358 P.2d 205, QUINCY JOHNSTON, INC. v. WILSON
Discussed
 1962 OK 189, 375 P.2d 878, CHRYSLER CORPORATION v. WALTER E. ALLEN, INC.
Discussed
 1962 OK 277, 383 P.2d 227, MISSOURI PACIFIC RAILROAD COMPANY v. RIDLEY
Discussed
 1968 OK 15, 449 P.2d 861, FLOUR MILLS OF AMER. v. AMERICAN STEEL BLDG. CO.
Discussed
 2004 OK 53, 98 P.3d 1070, MAGNUSSON v. NEW YORK TIMES CO. d/b/a KFOR
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed at Length
 1927 OK 426, 263 P. 126, 129 Okla. 22, DAY v. FERGUSON
Discussed
 1998 OK 30, 958 P.2d 128, 69 OBJ 1404, GAYLORD ENTERTAINMENT CO. v. THOMPSON
Discussed
 1942 OK 60, 122 P.2d 152, 190 Okla. 216, ALTON R.R. CO. v. OKLAHOMA FURNITURE MFG. CO.
Discussed


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA